1
2
3
4
5
6
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
*For the Northern District of California*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANTHONY MONIQUE RICHEY,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

No. C 12-4988 LB

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

    Plaintiff Anthony Richey moves for summary judgment, seeking judicial review of a final

decision by defendant Carolyn Colvin, the Commissioner of the Social Security Administration,

denying him Social Security Income ("SSI") disability benefits for his claimed disability of

schizoaffective disorder.  Plaintiff's Motion, ECF No. 18.[1]  The Administrative Law Judge ("ALJ")

determined that Mr. Richey failed to carry his burden of proof that his substance use is not a

contributing factor material to the determination of disability.  Administrative Record ("AR") 13-22.

Pursuant to Civil Local Rule 16-5, the matter is deemed submitted for decision by this court without

oral argument.  All parties have consented to the court's jurisdiction.  ECF Nos. 15, 17.  For the

_____

    [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page numbers at the top of the document.

C 12-04988 LB
ORDER

reasons stated below, the court **GRANTS IN PART** and **DENIES IN PART** both parties' motions for summary judgment and **REMANDS** this case to the Commissioner for further administrative proceedings.

**STATEMENT**

**I. PROCEDURAL HISTORY**

Mr. Richey, now 48 years old, applied for disability benefits on July 31, 2007 under Title XVI of the Social Security Act. AR 76-79. The Commissioner denied his application initially on December 7, 2007, and upon reconsideration on May 16, 2008. AR 13, 81-98. On July 3, 2008, Mr. Richey requested a hearing before an ALJ. AR 99. Mr. Richey did not attend the first scheduled hearing on November 19, 2009 because he lacked sufficient identification to enter the building, AR 30, and he did not attend the second scheduled hearing on February 9, 2010, because he was in jail. AR 36.

On June 2, 2010, Mr. Richey appeared with his attorney, Lisa Lunsford, at the third scheduled hearing in Oakland, California, and testified along with medical expert Julian Kivowitz, M.D., and vocational expert Lynda Berkley. AR 45-75. The ALJ issued a decision on July 20, 2010 finding that disability had not been established at any time since the date that Mr. Richey's application was filed because Mr. Richey failed to prove that his substance use disorder was not a contributing factor material to the determination of disability. AR 21.

On or about September 21, 2010, Mr. Richey timely requested that the Appeals Council review the ALJ's decision. AR 8-9. The Office of Disability Adjudication and Review sent Mr. Richey a Notice of Appeals Council Action on August 8, 2012, informing him that his request was denied. AR 1-6. That denial rendered the ALJ's July 20, 2010 decision the Commissioner's final decision. AR 7.

On September 25, 2012, Mr. Richey commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Compl., ECF No. 1. Mr. Richey and the Commissioner now both move for summary judgment. Pl.'s Mot., ECF No. 18; Comm'r's Opp'n and Cross-Mot., ECF No. 20.

**II. SUMMARY OF RECORD AND ADMINISTRATIVE FINDINGS**

This section summarizes (A) the medical evidence in the administrative record, (B) the medical expert's testimony, (c) the vocational expert's testimony, (D) Mr. Richey's testimony, and (E) the

1   ALJ's findings.

2   **A.  Medical Evidence**

3   The administrative record includes Mr. Richey's medical records dating back to 2001, which

4   indicate a history of physical and mental health issues and documented alcohol and drug abuse prior

5   to the claimed disability date of June 30, 2007.  AR 316-433.

6                    **1.  University of California – San Francisco**

7   The chronology of medical evidence begins with records from UCSF dated July 2001.  AR 318-

8   24.  Mr. Richey was seen at UCSF for abdominal pain and difficulty urinating, and the Consultation

9   Request and Report indicates that he admitted smoking crack two days prior.  AR 318.  The San

10  Francisco Fire Department Medical Report associated with that visit indicates that he reported using

11  cocaine the day before and consuming an unknown amount of vodka that morning.  AR 324.

12                    **2.  Alameda County Medical Center**

13  Mr. Richey visited Alameda County Medical Center ("ACMC") several times between 2002 and

14  2007.  *See* AR 331-433, 442-63.  First, in July 2002, Mr. Richey was referred for emergency

15  psychiatric detention by the Oakland Police Department.  *See* AR 460.  Mr. Richey was admitted to

16  ACMC's John George Psychiatric Pavilion.  AR 461.  The intake evaluation indicates that Dr.

17  Harold Cottman, M.D. diagnosed Mr. Richey with "Adjustment Disorder with Mixed Anxiety and

18  Depressed Mood," and "Personality Disorder NOS."  AR 462.  On admission, Mr. Richey's GAF

19  score was 60 and he was described as "Gravely Disabled."  *Id.*  Mr. Richey denied recent substance

20  use.  AR 461.  ACMC discharged Mr. Richey approximately nine hours later when Dr. Salma Khan,

21  M.D. noted that his behavior was "under control, no distress" and that Mr. Richey had a GAF score

22  of 80.  AR 463.

23  In August 2005, Mr. Richey visited ACMC's Highland Campus Emergency Department ("ED")

24  for abdominal pain.  AR 411-18.  The ED records note that Mr. Richey admitted using crack within

25  the previous four months.  AR 416.

26  In February 2006, Mr. Richey was again admitted to ACMC's John George Psychiatric Pavilion

27  on an emergency psychiatric detention after running into traffic.  AR 455-59.  The San Leandro

28  police officer who filled out Mr. Richey's Application for Emergency Psychiatric Detention wrote

UNITED STATES DISTRICT COURT
For the Northern District of California

1    that Mr. Richey reported being "Bi-polar . . . hearing voices and feels people are chasing him and

2    want to hurt him."  AR 455.  According to the officer, as Mr. Richey explained this, he became

3    "very emotional and appeared scared" such that the officer considered Mr. Richey a danger to

4    himself.  *Id.*  The clinician, Dr. Ramanathan, assessed Mr. Richey's GAF score as 50.  AR 457.  Dr.

5    Ramanathan noted that even though Mr. Richey denied using drugs, he "may have been using drugs

6    or ETOH last night and that is why he was walking into traffic."  AR 458.  Mr. Richey was

7    subsequently incarcerated in June and again in July 2006.[2]  AR 544-49.

8        On September 14, 2006, Mr. Richey again visited ACMC's Highland Campus ED, this time for

9    chest and foot pain.  AR 347-51.  Triage nurse Nelson wrote that Mr. Richey reported smoking crack

10   the night before and again that afternoon and that he had not eaten or drank anything buy alcohol in

11   the previous three days.  AR 347.  The next day, Mr. Richey returned to request medication for

12   chronic foot pain.  AR 345-46.  Dr. Honner noted that Mr. Richey was "out of meds (MS Contin and

13   Tyco) as [he was] recently in jail."  AR 345.  Dr. Honner discharged Mr. Richey with prescriptions

14   for Tylenol with Codeine and Ibuprofen and ordered a follow-up with the pain management

15   department at San Francisco General Hospital, where Mr. Richey stated he was "on pain contract."

16   AR 345-46.  On September 22, 2006, Mr. Richey returned to the Highland Campus ED with

17   multiple complaints (rash, cold sores, throbbing headache, fever, neck stiffness).  AR 389-91.

18   Attending physician Barry Simon noted in the ED record a 'neuropathy in feet' with questionable

19   etiology.  AR 389.

20       Mr. Richey returned to the Highland Campus ED on October 12, 2006.  Dr. Zorthian, the

21   examining physician, noted that Mr. Richey was requesting pain medication for "a 'neuropathy'

22   [causing] a constant sharp throbbing pain in [his] feet."  AR 373.  Dr. Zorthian found that Mr.

23   Richey's sensation to light touch was intact and that he had good circulation in his feet.  *Id.*

24   According to the ED record, Mr. Richey reported that he had quit using drugs two weeks prior.  *Id.*

25   On October 22, 2006, Mr. Richey visited the same ED for chest pain.  AR 365-68.  He denied recent

26

27       _____

28       [2]  The administrative record includes initial health screenings by the State of California
     Department of Corrections dated June 8 and July 18, 2006.  AR 544-49.  These are only relevant to
     show that Mr. Richey was incarcerated.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  cocaine use.  AR 366.  However, ED provider Kennedy noted diagnoses of "chest pain" and

2  "cocaine abuse" on the record.  AR 367.

3      Mr. Richey was again incarcerated on December 26, 2006.[3]  AR 543.  In February 2007,

4  California Department of Corrections ("CDC") notes signed by David Wu[4] indicate that Mr. Richey

5  then requested pain medication for foot neuropathy attributed to past alcohol abuse and flat feet,

6  noting that he "was accustomed to MS Contin" and had become "demanding and angry" in jail,

7  where he was prescribed vicodin.  AR 535.  Wu also noted that Mr. Richey's neuropathy was

8  "questionable," and that it was "more likely [he is] narcotic dependent," adding that Mr. Richey

9  declined his offer to prescribe non-narcotic analgesics.  *Id*.

10     Additional ED records from ACMC's Highland Campus show that Mr. Richey returned on April

11  24, 2007.  AR 338.  Triage nurse Scott wrote that he had "smoked some crack and now is having

12  chest pain."  *Id*.  The attending physician, Dr. Pease, noted "chest and leg pain after [a] several-day

13  cocaine binge."  AR 340.  A second physician, Dr. Noble, wrote that Mr. Richey "eloped from [the]

14  ED" after receiving morphine for the pain, although he was "warned that he needed to stay within

15  [the] ED" for treatment.  *Id*.

16     Mr. Richey was arrested the next day and arrived at Santa Rita Jail on April 26, 2007.  AR 607.

17  On June 20, 2007, while incarcerated at Santa Rita Jail, Mr. Richey sought treatment from Alameda

18  County Behavioral Health Care Services' Criminal Justice Mental Health Program for anxiety and

19  depression.  AR 605-07.  Treating therapist Penelope Russell, Ph.D., assessed Mr. Richey's GAF

20  score as 50 and diagnosed him with an "Anxiety Disorder NOS"[5] and polysubstance dependance.

21  AR 606.  At a July 2, 2007 follow-up appointment, Dr. Russell noted that Mr. Richey's sleep had

22  improved and he seemed "less pressured, anxious - but sa[id his] thoughts cont[inued] to race."  AR

23  _____

24      [3]  The administrative record includes another initial health screening by the Department of
    Corrections on December 26, 2006, but does not indicate the length of Mr. Richey's incarceration.
25  AR 543.

26      [4]  The record does not indicate Mr. Wu's title; therefore it is unclear whether he is an M.D.
    The record does indicate that he performed a physical examination and offered non-narcotic
27  prescriptions for Mr. Richey's pain.

28      [5]  The medical records seem to use "NOS" as an abbreviation for "Not Otherwise Specified."

601.

After being released from jail, Mr. Richey returned to the ED[6] with chest pain on July 16, 2007. AR 336.  Mr. Richey reported to James Roberts, the triage nurse, that he had not used drugs for six months but began smoking crack the day before visiting the ED.  *Id*.  Dr. Reynolds, the treating physician, noted "cocaine chest pain" that "occurs every time he smokes crack."  *Id*.  Mr. Richey was prescribed Vicodin and Ativan and discharged from the ED.  AR 334.  Mr. Richey returned to the same facility two days later and requested refills of the Vicodin and Ativan, which he reported had been stolen from him on the bus.  AR 334.  The physician's assistant who attended to Mr. Richey, Kristin Mancuso, advised him that the prescriptions he wanted refilled were controlled substances and she was unwilling to refill them.  *Id*.  She explained to Mr. Richey that he could "stop smoking the crack, which is the cause of [the] chest pain, and [would] likely not need these medications."  *Id*.

On September 16, 2007, Mr. Richey's mother called police and reported that Mr. Richey had locked himself in the bathroom with knives and was voicing thoughts of people trying to kill him. AR 449.  Mr. Richey was involuntarily detained at ACMC's John George Psychiatric Pavilion. AR 451.   According to the intake evaluation, he denied any illicit substance use or psychiatric problems.  AR 449.  According to clinician Dr. Sheikh, Mr. Richey's mother reported that he had been using crack regularly, drinking alcohol, and taking pain medication, and he had become "suspicious and paranoid."  AR 451.  Dr. Sheikh diagnosed Mr. Richey with "Psychotic Disorder NOS," "Cocaine Abuse," "Cocaine - Induced Psychotic Disorder With Hallucinations," and "Antisocial Personality Disorder."  *Id.*  When Mr. Richey was discharged on September 17, 2007, physician Dr. Greg Jeffers wrote that he "apparently was disorganized and paranoid and appeared to be under the influence" when admitted but showed no further psychotic behavior after being observed for eight hours.  AR 453.

### 3. Dr. Faith Tobias

Dr. Faith Tobias, a licensed psychologist at Health Analysis, Inc., conducted a clinical interview

---

[6]  The July 16, 2007 medical record (AR 336) does not include the name of the medical facility, but the AR Index indicates that it is part of the records from ACMC's Highland Campus.

UNITED STATES DISTRICT COURT
For the Northern District of California

and mental status disability examination of Mr. Richey on September 19, 2007.  AR 434-37.  During

the interview, Mr. Richey "reported a history of paranoid ideation associated with crack cocaine

use" that had increased in the week prior to the examination and included visual hallucinations.  AR

434.  Mr. Richey also reported a history of alcohol-induced neuropathy, including chronic pain in

his feet and lower legs.  AR 435.  Dr. Tobias noted that Mr. Richey's "Insight and Judgment"

"appear to be compromised due to his psychiatric symptoms and substance addiction."  AR 436.

Dr. Tobias conducted a Folstein Mini Mental State Exam, on which Mr. Richey "fell within the

normal range" though he "demonstrated mildly decreased attention and concentration, which

appeared to be secondary to his psychiatric symptoms."  *Id.*

Dr. Tobias also prepared a Medical Source Statement / Functional Assessment to "provide

diagnostic and clinical impressions, and to evaluate the claimant's current level of work-related

abilities from a psychiatric standpoint."  AR 439.  She noted that her examination was "limited in

scope," because it was "based on only one session of client contact in a structured environment"

with limited access to background information.  *Id.*  With those restrictions, Dr. Tobias noted

diagnostic impressions of "Mood Disorder, NOS," "Psychotic Disorder, NOS," "Rule Out:

Substance-Induced Mood and Psychotic Disorder," "Crack Cocaine Dependence," and "Alcohol

Dependence."  AR 437.          Dr. Tobias also rated Mr. Richey's current level of impairment of

twelve work-related abilities, listing Mr. Richey's level of impairment as "Mild to Moderate" in four

of those areas:  withstanding the stress of a routine work day, maintaining emotional

stability/predictability, interacting appropriately with co-workers and supervisors on a regular basis,

and interacting appropriately with the public on a regular basis.  AR 437.  With regard to the other 8

work-related abilities, Dr. Tobias rated Mr. Richey's level of impairment as "Mild" with regard to 2

abilities, "None to Mild" for another 2, and "None" for the 4 remaining abilities.  AR 437.

### 4. Dr. Samer Nuhaily

Dr. Samer M. Nuhaily, a physician with MDSI Physician Services, conducted an internal

medicine evaluation on Mr. Richey on September 23, 2007.  AR 438-41.  Dr. Nuhaily diagnosed a

chronic neuropathy secondary to alcohol abuse, although he also concluded that Mr. Richey's gait

and range of motion were within normal limits, and a straight leg raise test was negative.  AR 441.

As to Mr. Richey's functional capabilities, Dr. Nuhaily noted that the neuropathy had limited Mr. Richey "to standing and walking about four hours in an eight-hour workday." *Id*. He also noted that Mr. Richey could lift 25 pounds frequently and 50 pounds occasionally. *Id*.

### 5. ACMC - John George Psychiatric Pavilion

Mr. Richey returned to ACMC's John George Psychiatric Pavilion on October 13, 2007. AR 444-47. According to intake evaluation notes completed by Dr. Susan Ahart, Mr. Richey said he had used cocaine and alcohol and then felt that "people were threatening him and following him," so he admitted himself voluntarily. AR 444. Mr. Richey requested "pain meds" or "benzos," stating that he needed to "clear his mind," which Dr. Ahart refused. *Id*. She noted that he had "difficulty ambulating due to neuropathy." *Id*. She diagnosed Mr. Richey with "Psychotic Disorder NOS," "Cocaine - Induced Psychotic Disorder, With Delusions," "Alcohol Dependence," "Personality Disorder NOS," and "peripheral neuropathy." AR 445. Later on October 13, Dr. Christopher Sue, M.D., noted that Mr. Richey reported "heavy crack use prior to admission . . . . There are no signs of overt psychosis, mania, or drug detox sxs." AR 446. Dr. Sue's Exit Diagnosis was identical to Dr. Ahert's (but did not mention neuropathy). *Id*.

### 6. San Francisco General Hospital

On October 19, 2007, Mr. Richey saw Dr. Lambrakos, a physician at San Francisco General Hospital ("SFGH"). AR 649-51. Dr. Lambrakos's notes indicate that Mr. Richey wanted to renew his expired pain medication contract for foot pain/neuropathy, and that he stated he had not filled a prescription for pain medication outside of that contract in order to avoid jeopardizing it. AR 649. Mr. Richey also reported that he was experiencing depression and anxiety and that he was using crack again. *Id*. Dr. Lambrakos also noted Mr. Richey's "long hx alcohol & cocaine use w/exacerbation of psych sx." *Id*. Dr. Lambrakos reinstated Mr. Richey's pain medication contract for MS Contin and Tylenol with Codeine. AR 650. Mr. Richey returned to SFGH on November 7, 2007 and requested refills of his pain medication, stating that the MS Contin and Tylenol with Codeine he obtained on his last visit had been stolen from him.[7] *See* AR 646. The medical

---

[7] The record pertaining to Mr. Richey's visit on November 7, 2007 reads "pt told to f/u clinic for med refills." AR 648. It is therefore unclear whether Mr. Richey was given refills of his

1    screening notes indicate that he reported using cocaine three days prior.  AR 647.

2                              **7.  San Quentin State Prison**

3    Mr. Richey also received treatment while incarcerated at San Quentin from December 2007 to

4    November 2008.  AR 515-61, 574-94, 608-27.  Mr. Richey underwent an initial mental health

5    evaluation on December 14, 2007.  AR 531-33.  The clinician, identified only as Gorewitz[8], notes

6    that Mr. Richey "started marijuana and alcohol as a teen . . . started crack [at] age 18 and has been

7    using ever since."  AR 531.  The evaluation comments include "[n]o indication of formal thought

8    disorder," "[n]o psychotic symptoms reported or noted," "[m]ood and [a]ffect within normal limits,"

9    and "[p]rimary issues are related to cocaine and alcohol abuse."  AR 532.  Gorewitz assessed a GAF

10   score of 75 and explained, "[t]hough he presents with vague symptoms (difficulty sleeping, etc.),

11   there is nothing that appears related to mental health issues."  AR 533.

12   While incarcerated, Mr. Richey submitted several requests for health care services.  AR 520,

13   523-25, 527-30, 534.  Treatment notes dated January 7, 2008 indicate that Mr. Richey was "agitated,

14   demanding MS Contin" for his neuropathy, although his treating physician[9] indicated that on

15   examination Mr. Richey exhibited negative neuropathic findings, a negative straight leg raise

16   bilaterally, and a stable gait.  AR 529.

17                              **a.  Dr. Sprick**

18   Mr. Richey also submitted a request for mental health services dated February 12, 2008, in

19   which he stated he was having nightmares and hearing voices.  AR 526.  Interdisciplinary progress

20   notes show that Mr. Richey subsequently underwent a 45-minute interview with Dr. Sprick[10] on

21   March 5, 2008.  AR 590-93.  Dr. Sprick prefaced his opinion by noting what he described as two

22   limitations: "the inmate's Central File was not reviewed" and neither were Mr. Richey's "mental

_____

pain medication on that date.

[8]  The record does not indicate Gorewitz's qualifications or title other than "Clinician."

[9]  The name of the treating physician does not appear in the record.

[10]  The record is signed "E. Sprick, Ph.D.," but does not indicate Dr. Sprick's qualifications or job title.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

health records . . . [as they] had not yet reached San Quentin." AR 590, 592.  Dr. Sprick wrote that

his "evaluation and conclusions [were based] on a 45-minute interview and the review of the

currently available clinical data."  AR 590.  Dr. Sprick's notes indicate that Mr. Richey reported "90

days without drug or alcohol use" and an increase in his psychological distress over the previous six

weeks.  AR 591-92.  Dr. Sprick assessed a GAF score "in the mid-fifties" and wrote "he is found to

have lost coping and functional ability."  AR 592.  Dr. Sprick went on to explain:

> The confounding issue remains his drug use as it is possible that the above clinical picture is
> in part due to the lingering aftermath of a protracted drug and alcohol addiction; however,
> this man presents in a simple, clear, and direct manner admitting to his use of drugs and
> alcohol.  He explains that he used drugs "to calm down my nerves..." and adds that his
> "sadness" has been chronic and currently increased by his "grief."  This writer is of the
> opinion that Mr. Ritchey [sic] represents an example of dual diagnoses where depression
> coexists with addiction, the latter probable [sic] serving as the vehicle that both manifests and
> contains the former.

AR 592-93.  Dr. Sprick concluded his opinion by noting that "the clinical and diagnostic challenge"

Mr. Richey presents "is the assessment of his clinical reality beyond his addiction history; in this

writer's opinion, recent past mental state evaluations stopped with his drug history . . . ."  AR 593.

### b.  Margaret Hanna, APN

On March 7, 2008, Margaret Hanna, APN at San Quentin evaluated Mr. Richey after he

requested narcotics and a cane for his neuropathy.  AR 521-22.  Hanna noted that Mr. Richey was

"persistent in having a narcotic," although she advised him that neuropathic pain usually responds

better to non-narcotic pain medication such as Elavil or Neurontin.  AR 521.  Hanna prescribed

Elavil for Mr. Richey, although in her assessment she noted a "questionable neuropathy."  *Id.*

### c.  Psychiatrist Dr. Ponath, Physician Dr. David, and Laboratory Records

Mr. Richey was evaluated periodically between April and November 2008 by Dr. Ponath, a

psychiatrist at San Quentin.  AR 574-88, 608-12.  On April 4, 2008, Dr. Ponath noted that Mr.

Richey was "mildly dysphoric," and that he spoke "openly and show[ed] some insight into how his

mental condition is related to drug use and a severely distressing childhood."  AR 588.  Mr. Richey

reported that he was coping adequately on that date.  *Id.*  On April 10, 2008, Dr. Ponath wrote that

Mr. Richey was "having difficulties with voices, some paranoid misinterpretations, insomnia,

difficulty concentrating/remembering as well as energy, mood."  AR 585.  Dr. Ponath prescribed

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Olanzapine for paranoia and insomnia.  *Id.*

2  According to Dr. Ponath's notes, Mr. Richey reported on May 9, 2008 that the "voices, paranoia,

3  and daytime anxiety" persisted, but Dr. Ponath noted that he "presents as appearing better than he

4  describes.  He is calm, coherent, cooperative, goal directed re meds."  AR 581.  Dr. Ponath listed the

5  controlling diagnoses as "Cocaine/Alcohol dependence" and "Psychotic Disorder, NOS (re to long

6  term drug abuse)" and prescribed Prozac.  AR 580-81.

7  Mr. Richey had a follow-up physical examination on May 15, 2008 with Clarene David, M.D.

8  AR 519.  Dr. David also reviewed Mr. Richey's records from SFGH and assessed a diagnosis of

9  peripheral neuropathy "most likely due to heavy alcohol use in the past."  *Id.*  Dr. David noted that

10  Mr. Richey was "quite interested in getting back in [sic] MS Contin," stating that it was the only

11  thing that helped.  *Id.*  Mr. Richey signed a pain management contract and received a prescription

12  for MS Contin.  *Id.*  Dr. David noted that he should return in 30 days for another follow-up

13  examination.  *Id.*

14  Psychiatric progress notes from a follow-up with Dr. Ponath on June 20, 2008 show "minimal"

15  symptoms with "no evidence of psychotic distress."  AR 577.

16  Mr. Richey saw Dr. David for his scheduled follow-up physical examination on July 3, 2008.

17  AR 517-18.  Dr. David noted that Mr. Richey "remain[ed] very aggressive with wanting to increase

18  his dose" of MS Contin, for which Dr. David noted he was not a good candidate due to his history of

19  cocaine use, aggressiveness in trying to increase the dose, and focus on the drug in pain management

20  requests.  AR 518.  Dr. David explained to Mr. Richey that she would not be making any changes to

21  his prescribed dose of MS Contin, which "caused him to continue to interrupt the interview, bringing

22  the conversation back to MS Contin even when [Dr. David] was trying to discuss his anemia."  *Id.*

23  On July 18, 2008, Mr. Richey again met with Dr. Ponath for a follow-up psychiatric evaluation.

24  AR 575.  Dr. Ponath's notes indicate Mr. Richey had "moderately improved" and that his symptoms

25  were primarily depressive, but he was calm, coherent, cooperative, organized and goal directed.  *Id.*

26  Dr. Ponath's notes from another follow-up evaluation on August 15, 2008 indicate similar findings,

27  with a plan to increase Mr. Richey's dosage of Prozac to manage anxiety.  AR 612.

28  Laboratory Records from San Quentin show that Mr. Richey was screened for drug use while

incarcerated there in August, September, and October of 2008.  AR 614-19.  The results of those three tests were negative for amphetamine, barbiturates, benzodiazepines, cannabinoid, cocaine, and phencyclidine.  *Id.*  Mr. Richey tested positive for opiates in August, negative in September, and positive again in October.[11]  *Id.*

On October 22, 2008, Mr. Richey met with Dr. Ponath for a follow-up evaluation.  AR 610.  At that time, Mr. Richey reported a "low level of bother" with nighttime auditory hallucinations.  *Id.* He also reported feeling satisfied with his medications for anxiety and sleep.  *Id.*  A final assessment by Dr. Ponath on November 17, 2008, before Mr. Richey was discharged from San Quentin, indicates that Mr. Richey had "a solid release plan and a good attitude."  AR 608.

### 8.  Alameda County Criminal Justice Mental Health Program

Outpatient records from the Alameda County Criminal Justice Mental Health program dated February 6 and February 14, 2009 indicate that Mr. Richey was referred there by San Quentin for further evaluation.  AR 594-99.  The clinicians[12] noted that Mr. Richey reported on both visits that he was using alcohol daily.  AR 595, 597.  Mr. Richey was initially assigned a GAF score of 39 on February 6, 2009, but that was increased to a GAF score of 50 on February 14, 2009.  AR 595, 597.

### 9.  Dr. Thomsen

Dr. Ede Thomsen is a licensed clinical psychologist to whom Mr. Richey was referred by the Homeless Action Center on April 1, 2009.  AR 562-73.  Dr. Thomsen conducted an interview and a series of tests, including an IQ test, anxiety and depression inventories, a Millon Clinical Multiaxial Inventory - III ("MCMI-III"), and a Mini Mental State Examination ("MMSE").  AR 566.

Dr. Thomsen noted that Mr. Richey started abusing substances shortly after experiencing sexual abuse, stating:

> It seems from this timeline that his substance use was a way for him to mitigate the symptoms he was experiencing from the trauma he had experienced as well as his

---

[11]  The positive test results appear to coincide with his prescription for MS Contin, at least for the month of August.  AR 515 (current medications list includes MS Contin, dated August 18, 2008).

[12]  The record contains the signatures of Mr. Richey's clinicians at the Alameda County Criminal Justice Mental Health program, but the names are illegible.

UNITED STATES DISTRICT COURT
For the Northern District of California

hyperactive symptoms.  Even if he were to stop his substance use, his psychological symptoms would still be prominent and debilitating.  Furthermore, personality disorders, which Mr. Richey also has, are not caused by substance abuse, however substance abuse is often an outcome of someone having a personality disorder, as such a person who has a personality disorder is at high risk of developing a substance abuse problem as is the case with Mr. Richey.

AR 565.  Although Mr. Richey's IQ was estimated to be in the normal range, his other test results indicated severe deficits in attention/concentration, executive functioning, memory, and language.  AR 566-67.  Dr. Thomsen noted that Mr. Richey's depression and anxiety inventories showed he was experiencing severe depression as well as severe anxiety.  AR 568.  Furthermore, Mr. Richey's MCMI-III "responses suggest that he has abused or is currently abusing drugs."  AR 571.

Dr. Thomsen concluded that "Mr. Richey has Schizoaffective Disorder – Bipolar Type, Generalized Anxiety Disorder, Avoidant Personality Disorder, and Depressive Personality Disorder with Antisocial Personality Traits and Schizoid Personality Traits."  AR 573.  Dr. Thomsen also concluded that:

> his substance abuse does not appear to be the cause of his mental illnesses, rather it is the result of his attempts to mitigate his symptoms.  Mr. Richey also has symptoms of personality disorders, which can be causal factors in substance abuse but are never caused by substance abuse.  His mental illnesses are debilitating for Mr. Richey.

*Id.*

### 10.  San Francisco General Hospital

On August 4 and 5, 2009, Mr. Richey sought treatment at San Francisco General Hospital for a rash, and complained that his pain medication was not working.  AR 632-33.  On August 8, 2009, Mr. Richey returned to the ED and requested "lab work," stating that he was "trying to get into Joe Heeley Detox."  AR 628.  He reported taking methadone, percocet, and ativan, and using cocaine and alcohol.  AR 628-29.

### 11.  Social Work Intern Sarah Thibault, UCSF

After meeting with Mr. Richey "a number of times," Sarah Thibault, a social work intern at UCSF's ED Case Management Program, wrote a letter[13] dated November 12, 2009 regarding her

---

[13]  The letter is addressed, "To Whom It May Concern."

general impressions.[14]  AR 667.  Ms. Thibault stated her impression that Mr. Richey "has an
underlying mental health diagnosis that is independent from his substance dependence disorder,"
assessing a GAF score of 35.  AR 667-69.  Ms. Thibault added that Mr. Richey needs a thorough
psychiatric assessment to "piece out the specifics of his diagnosis."  AR 667.

### 12.  Social Worker Peter Morris, San Francisco Department of Public Health

Mr. Richey was referred to the San Francisco Department of Public Health Westside Mental
Health Crisis Clinic by the drug court on May 6, 2010, where he met with nurse practitioner
Catherine Kim.  AR 680-83.  Ms. Kim diagnosed a mood disorder NOS, "likely bipolar" and
schizoaffective disorder, noting that Mr. Richey's "diagnostic picture [is] complicated" by active
polysubstance abuse of alcohol, crack, and benzodiazepines.  AR 680.  She assessed a GAF score of
55.  *Id*.

Psychiatric social worker Peter Morris of the San Francisco Department of Public Health
Community Justice Center submitted a letter[15] dated May 24, 2010 in which he stated Mr. Richey
had been involved with the Justice Center since December 2009 and demonstrated "a pervasive
pattern of non-compliance" with their program.  AR 315.  Mr. Morris explained that the program "is
designed to help individuals involved in the criminal justice system successfully navigate that
system."  *Id*.  Mr. Morris wrote that he believed Mr. Richey's non-compliance was the result of an
"underlying personality disorder independent of his drug use," and that Mr. Richey would be unable
to participate in any meaningful or sustainable employment.[16]  *Id*.

### 13.  Dr. Kimberly Kono

On November 16, 2011, the Homeless Action Center referred Mr. Richey to Dr. Kimberly Kono

---

[14]  The record is unclear as to the dates and number of meetings Ms. Thibault had with Mr.
Richey.

[15]  The letter is addressed, "To Whom It May Concern."

[16] The AR does not include any other documentation from Mr. Morris other than the letter
dated May 24, 2010.  Mr. Morris does not provide an explanation of the basis for his conclusions
about Mr. Richey's personality disorder and employment potential.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    for a neuropsychological evaluation.[17]  AR 686-96.  Dr. Kono tested Mr. Richey's intellectual

2    functioning, academic functioning, attention and concentration, learning and memory, language,

3    visuospatial organization, and motor, executive, and psychological functioning.  AR 686-96.

4    According to Dr. Kono, Mr. Richey's test results indicated that his intellectual functioning is "in the

5    borderline range of mental retardation."  AR 694.  Dr. Kono also found Mr. Richey mildly to

6    moderately impaired in each of the other areas tested.  *Id.*

7        In terms of his mental health, Dr. Kono stated that "Mr. Richey has a long history of mental

8    illness (and, therefore, predates his drug use)."  *Id.*  Dr. Kono based this opinion on Mr. Richey's

9    report of experiencing depression in early childhood and having behavioral difficulties in

10   adolescence, as well as not having been in a relationship since his teens.  *Id.*  In sum, Dr. Kono

11   stated that Mr. Richey's cognitive deficits and mental health problems prevent him from living

12   independently without supervision and from functioning successfully in a work environment.  AR

13   694-95.

14   **B.  Hearing Testimony**

15                     **1.  Medical Expert Dr. Kivowitz**

16       Dr. Kivowitz is the Medical Expert ("ME") who testified during the hearing before the ALJ.  Dr.

17   Kivowitz stated that, based on his review of the record, Mr. Richey suffered impairments indicating

18   a dual diagnosis of polysubstance abuse and schizoaffective disorder.  AR 50-51.

19       The ME testified that he did not know whether Mr. Richey's schizoaffective disorder,

20   independent of substance abuse, met a listing level impairment.  AR 51-52.  His

21   ALJ:      I got it, the psychotic disorders.  Okay, 1203, but that's with substance abuse and,
             if I understand you correctly, you are unable to determine from this record,
22           whether he would, in the absence of substance abuse, if there were a period of
             sobriety, whether he would still meet a listing.  Is that correct?
23
     ME:       That's correct.
24
     ALJ:      Okay.  So it's presently, is it fair to say, it's impossible to determine the
25            claimant's functioning at all independent of substance abuse?

26   ME:       I can't tell.  Maybe somebody else could, but I can't.

27

28
     _____
          [17] This exam postdates the July 20, 2010 ALJ decision.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

AR 53.  When Mr. Richey's attorney asked whether Mr. Richey's San Quentin treatment records would provide a "clean and sober" baseline for diagnosing Mr. Richey's functioning independent of substance abuse, the ME stated that they would not helpful.  *See id.*  He explained, "I just came from a conference where this issue was discussed and there were divided opinions.  But, one opinion, which I think will hold, even if they have a period of incarceration situation, we still can't tell.  And that's what I show, too."  *Id.*  The reason was that the patient might continue to use drugs in jail or that there might be lingering psychological affects from pre-incarceration drug abuse.  AR 54.

The ALJ then asked for the ME's opinion as to how much time a claimant must be sober before it is possible to evaluate his or her functioning.  Dr. Kivowitz gave conflicting answers.  First, he gave the following testimony:

> ALJ:   In your opinion, doctor, what period of sobriety do you need before you can reasonably evaluate, or any practitioner could reasonably evaluate a person's functioning?
>
> ME:    I would like to see him go to a place – I gather this Joe Healey is a rehabilitation center, a drug rehabilitation center.  If somebody went to a drug rehabilitation center and spent the time they allotted for him there, and then came out, I would be willing to say that he is off substances.
>
> ALJ:   And, then you could render some opinion about his functioning independently of the substance, correct?
>
> ME:    Yes.  Yes.

AR 54.  Later, the ALJ asked the ME, "what degree of time you felt was necessary for [the drug abuse] affects [sic] to be gone."  AR 55.  The ME responded as follows:

> A      Well, I am thinking, at least, 18-months.
>
> Q      And, what do you base that on?
>
> A      Again, I just went to a conference in New Orleans.  I just came back last week and this issue was debated and many people felt just what I just said.

AR 55.  The ME also testified that he could not assess the opinions of the other medical providers, as follows:

> ALJ:   But, some of the evaluators here and even treaters, mental health treaters, refer to an underlying personality disorder, independent of drug use.  You are not able to assess that, as well, is that correct?
>
> ME:    Yes. I see that as Alameda County Medical Center, 10/13/07 personality disorder, NOS.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    ALJ:        Yes. Okay.

2    ME:         I can't assess that.

3    ALJ:        Okay. And, that's because of, also, the ongoing substance abuse, is that correct?

4    ME:         Yes.

5    AR 56.

### 2.  Vocational Expert Ms. Berkley

Ms. Berkley is the vocational expert ("VE") who testified at the hearing regarding Mr. Richey's physical and psychological limitations. AR 72-74. Ms. Berkley testified that the four-hour standing and walking limitation noted in the medical records would preclude Mr. Richey from performing about 80 percent of the jobs within the medium and light occupational bases. AR 71-72. She stated that a hypothetical person who had difficulty working effectively with others would be precluded from working in unskilled positions because frequent contact with supervisors would be required. AR 73. Ms. Berkley also testified that a person with a moderate impairment in concentration, defined as being off-task fifteen percent or more of the day, would be precluded from work. AR 74-75.

### 3.  Mr. Richey

Mr. Richey testified that while he was incarcerated at San Quentin, he experienced "psychological problems" that were not alleviated by the medication he was prescribed. AR 57-58. He denied using any illegal drugs while incarcerated and stated, "had I been messing around, they would have stopped my medications." AR 58. He testified that he is unable to take care of himself outside of jail because "there are more responsibilities" and he does not "have any skills." AR 59-60. Mr. Richey stated that the reason he was incarcerated at San Quentin was for parole violations and grand theft, but claimed that he was innocent of the latter charge. AR 62-63.

Mr. Richey testified that he liked his current treatment, but his state of mind was "like racing," his thoughts were "going in so many directions" and he was unable "to calm down." AR 61. He also testified that none of the medications he had been prescribed helped with his psychotic symptoms. AR 64. He then testified that Ativan was the only medication that he found helpful in dealing with his anxiety. He added that "they tried to tell me maybe if they upped the dose it might

1  help.  But, [they] think I am just trying to get loaded."  AR 65.

2  **C.  Summary of ALJ's Decision**

3  Applying the five-step sequential evaluation process, on July 20, 2010, the ALJ held that Mr.

4  Richey was not disabled under section 1614(a)(3)(A) of the Social Security Act.  AR 22.

5  At step one, the ALJ found that Mr. Richey was not precluded from a finding of disability on the

6  basis of work activity because there was no evidence that he had ever engaged in substantial gainful

7  activity.  AR 14.

8  At step two, the ALJ found that Mr. Richey suffered from a combination of impairments:

9  polyneuropathy secondary to alcohol abuse, schizoaffective disorder, and polysubstance abuse.  AR

10  15.  The ALJ determined that the medical records supported a finding that Mr. Richey's

11  impairments, in combination, significantly limited his ability to work and were "severe."  *Id.*

12  At step three, the ALJ determined that Mr. Richey is disabled on the basis of a listing level

13  psychotic disorder when substance abuse is taken into consideration.  AR 19.  In making that

14  determination, the ALJ reviewed Mr. Richey's medical records pertaining to his physical and

15  psychological symptoms and noted the "long history of polysubstance abuse."  AR 15-19.

16  Specifically, the ALJ cited multiple occasions between 2001 and 2010 when Mr. Richey

17  acknowledged active substance abuse to treating physicians and mental health professionals.  AR

18  15-18.

19  The ALJ then found that Mr. Richey failed to carry his burden of establishing that in the absence

20  of substance abuse, he would continue to have a "severe" impairment or combination of

21  impairments.  AR 19-21.  Because Mr. Richey did not establish disability independent of substance

22  abuse, the ALJ found that his substance use was a contributing factor material to the determination

23  of disability.  *Id.*  As a result, Mr. Richey was not disabled for purposes of section 1614(a)(3)(A) of

24  the Social Security Act and was ineligible for benefits.  AR 22.

25  The ALJ's decision was predicated on a number of credibility determinations, some of which are

26  the subject of the pending cross-motions for summary judgment.  First, the ALJ accorded "great

27  weight" to Dr. Kivowitz's testimony, finding that given the "considerable evidence" of substance

28  abuse, his diagnosis of schizoaffective disorder with polysubstance abuse "at all times relevant" to a

UNITED STATES DISTRICT COURT
For the Northern District of California

determination of disability was consistent with the record as a whole.  AR 18-19.  Dr. Kivowitz's testimony was central to the ALJ's related conclusions that (1) it was impossible to determine Mr. Richey's physical or mental impairment independent of substance abuse because he was abusing substances every time he was evaluated, and (2) to the extent Mr. Richey demonstrated an independent impairment, he could not possibly prove it was sufficiently severe because "the ME testified that 18 months of abstinence is required before a reliable assessment could occur."  AR 20. The ALJ also relied on Dr. Kivowitz's opinion that "there is insufficient evidence to determine the severity of any alleged neuropathy in the absence of substance abuse."  AR 20.

Second, the ALJ "accord[ed] absolutely no weight" to the opinions of Dr. Thomsen, Ms. Thibault, and Mr. Morris to the extent that they suggested a severe mental impairment independent of substance abuse.  AR 19-20.  In support of that decision, the ALJ noted that the record lacks evidence that Mr. Richey ever abstained from alcohol and drugs for a sustained period.  AR 19-20. The ALJ specifically rejected the evidence that Mr. Richey's psychological symptoms continued while he was incarcerated and, presumably, alcohol and drug-free.  AR 20.  The ALJ explained that he relied on Dr. Kivowitz's testimony that "it is impossible to determine from such periods of incarceration how the claimant would function while clean and sober since, first, the claimant could still be using illicit substances while in prison and, even if he were not, the effects of the claimant's long-term polysubstance abuse would still be present throughout the multiple periods of incarceration since his alleged disability onset date."  AR 20.

The ALJ also found Ms. Thibault's and Mr. Morris's opinions unpersuasive because neither is a licensed psychologist or psychiatrist "whose opinion would be entitled to greater deference."  AR 20.

Finally, the ALJ then considered Mr. Richey's credibility and found that his reported symptoms were not consistent with the objective evidence in the record.  AR 21.  First, the ALJ rejected Mr. Richey's allegation that he is disabled independent of substance abuse based on evidence of his ongoing substance abuse, drug-seeking behavior, and repeated requests for refills of narcotic pain medication that he reported lost or stolen.  *Id*.  Second, the ALJ stated that Mr. Richey's "extensive criminal background" and lack of any significant work history undermined his credibility.  *Id*.  The

1    ALJ noted that Mr. Richey "admitted, though tended to minimize, his past convictions ('robberies

2    and stuff') and parole violation ('they say' grand theft)."  AR 18.  Finally, the ALJ found Mr.

3    Richey's statements were inconsistent: his reported inability to be around other people was

4    unconvincing since he also reported visiting with friends and family and going to church and the

5    movies.  AR 21.  The ALJ also pointed to Mr. Richey's testimony that he remained sober while

6    incarcerated in order to avoid interfering with his medication, while testifying that no medication

7    was of any help.  AR 18.

8                                        **ANALYSIS**

9        Mr. Richey asks the court to (1) review the ALJ's decision and (2) remand to the ALJ for an

10    award of benefits or, in the alternative, further administrative proceedings.  Pl.'s Mot., ECF No. 18.

11    Mr. Richey challenges the ALJ's decision on several grounds.  He claims the ALJ erred by

12    (1) failing to provide legally sufficient reasons for rejecting the opinions of two examining

13    psychologists and two social workers, while assigning the greatest weight to the medical expert's

14    opinion; (2) permitting the medical expert to testify telephonically; (3) improperly evaluating the

15    materiality of Mr. Richey's drug and alcohol use; (4) discounting Mr. Richey's credibility; and (5)

16    failing to find that Mr. Richey had a personality disorder constituting a severe impairment at step

17    two.  Pl.'s Mot., ECF No. 18 at 9-23.

18        The court grants Mr. Richey's motion in part, and remands for reconsideration because the ALJ

19    erred by (1) misconstruing Dr. Kivowitz's testimony and (2) giving great weight to Dr. Kivowitz's

20    (misconstrued) testimony so as to disregard or reject the opinions of Dr. Sprick and Dr. Thomsen.

21    On remand, the Commissioner shall reconsider whether Mr. Richey has met his burden of proof that

22    his substance use disorder is not a contributing factor material to the determination of disability and

23    consider Dr. Kono's opinion as part of that record.

24    **I. LEGAL STANDARDS**

25        **A.  Standard of Review**

26        Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

27    Commissioner if the plaintiff initiates the suit within 60 days of the decision.  District courts may set

28    aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

1    are not supported by substantial evidence in the record as a whole."  42 U.S.C. § 405(g); *Vasquez v.*

2    *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation omitted).  "Substantial evidence means more

3    than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

4    might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

5    Cir. 1995).  If the evidence in the administrative record supports both the ALJ's decision and a

6    different outcome, the court must defer to the ALJ's decision and may not substitute its own

7    decision.  *See id; accord Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

8    **B.  Applicable Law: Five Steps to Determine Disability**

9        An SSI claimant is considered disabled if (1) he suffers from a "medically determinable physical

10   or mental impairment which can be expected to result in death or which has lasted or can be

11   expected to last for a continuous period of not less than twelve months," and (2) the "impairment or

12   impairments are of such severity that he is not only unable to do his previous work but cannot,

13   considering his age, education, and work experience, engage in any other kind of substantial gainful

14   work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(A) & (B).

15       The Social Security regulations set out the following five-step sequential process for determining

16   whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R.

17   § 404.1520.

18                    **1.  Step One**

19       Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is

20   "not disabled" and is not entitled to benefits.  If the claimant is not working in a substantially gainful

21   activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step

22   two.  *See* 20 C.F.R. § 404.1520(a)(4)(i).

23                    **2.  Step Two**

24       Is the claimant's impairment (or combination of impairments) severe?[18]  If not, the claimant is

25   not disabled.  If so, the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

26       The burden at Step Two is relatively light. In particular, the Ninth Circuit has held that "the step

27   _____

28       [18]  An impairment or combination of impairments is not severe if it does not significantly
     limit [the claimant's] physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80

2  F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153-54 (1987)).  Thus,

3  "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence

4  establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to

5  work."  *Id.* (internal quotation marks omitted) (citing SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303,

6  306 (9th Cir. 1988)).

7                          **3.  Step Three**

8           Does the impairment "meet or equal" one of a list of specified impairments described in the

9  regulations?  If so, the claimant is disabled and is entitled to benefits.  If the claimant's impairment

10  does not meet or equal one of the impairments listed in the regulations, then the case cannot be

11  resolved at step three, and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

12                          **4.  Step Four**

13          Considering the claimant's residual functional capacity, is the claimant able to do any work that

14  he or she has done in the past?  If so, then the claimant is not disabled and is not entitled to benefits.

15  If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step

16  four, and the case proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

17                          5.  **Step Five**

18          Considering the claimant's residual functional capacity, age, education, and work experience, is

19  the claimant able to "make an adjustment to other work?"  If not, then the claimant is disabled and

20  entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is able to do other work, the

21  Commissioner must establish that there are a significant number of jobs in the national economy that

22  the claimant can do.  There are two ways for the Commissioner to show other jobs in significant

23  numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to

24  the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.  If the Commissioner

25  meets this burden, the claimant is not disabled.  For steps one through four, the burden of proof is on

26  the claimant.  At step five, the burden shifts to the Commissioner.  *See Tackett*, 180 F.3d at 1098.

27                          **6.  Substance Abuse Determination**

28          A finding that the claimant is disabled under the five-step inquiry does not automatically qualify

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   him for disability benefits if the record indicates the he suffers drug or alcohol addiction.  *Parra v.*

2   *Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir.

3   2001); 42 U.S.C. §§ 423(d)(2)(c), 1382a(3)(J).  In such cases,"the ALJ must conduct a drug and

4   alcoholism analysis by determining which of the claimant's disabling limitations would remain if the

5   claimant stopped using drugs or alcohol." *Parra*, 481 F.3d at 747; *see also* 20 C.F.R.

6   §§ 404.1535(b)(2), 416.935(b)(2); *Bustamante*, 262 F.3d at 954; *Ball v. Massanari*, 254 F.3d 817,

7   821 (9th Cir. 2001).  If drug or alcohol addiction is a "contributing factor material to the

8   Commissioner's determination that the individual is disabled," then the claimant is not eligible for

9   disability benefits.  42 U.S.C. § 423(d)(2)(c); 20 C.F.R. §§ 404.1535(a), 416.935(a).  The Ninth

10  Circuit has stressed that courts must not "fail[] to distinguish between substance abuse contributing

11  to the disability and the disability remaining after the claimant stopped using drugs or alcohol."

12  *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  That is, "[j]ust because substance abuse

13  contributes to a disability does not mean that when the substance abuse ends, the disability will too."

14  *Id.*  The burden, however, rests on the claimant to prove that the drug or alcohol abuse is not a

15  contributing factor material to disability.  *Parra*, 481 F.3d at 748.

16  **II.  THE ALJ'S EVALUATION OF THE MEDICAL EVIDENCE**

17      Mr. Richey contends that the ALJ made a number of analytical errors in evaluating the medical

18  evidence and that these are fatal to the ALJ's dispositive finding that Mr. Richey did not

19  demonstrate that his substance abuse is not a contributing factor material to his disability.  Pl.'s

20  Mot., ECF No. 18 at 20.  Mr. Richey contends that the ALJ erred by rejecting the opinions of (a)

21  examining psychologist Dr. Ede Thomsen, (b) social worker Sarah Thibault, and (c) psychiatric

22  social worker Peter Morris without providing clear and convincing or specific and legitimate reasons

23  supported by substantial evidence.  *Id.* at 11-15.  In particular, Mr. Richey contends that the ALJ

24  erroneously rejected these opinions based on the testimony of Dr. Julian Kivowitz, a non-treating,

25  non-examining medical expert.  Pl.'s Mot., ECF No. 18 at 17-20.  Finally, Mr. Richey argues that

26  the ALJ erred by ignoring the opinion of examining psychologist Dr. Evelyn Sprick.  *Id.* at 10-11.

27  The court addresses each argument in turn.

28      In evaluating the weight to accord medical opinions, the ALJ must consider each medical

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   opinion in the record together with the rest of the relevant evidence in making a determination of

2   disability.  20 C.F.R. § 416.927(b); *Zamora v. Astrue*, No. C 09-3273 JF, 2010 WL 3814179, at *3

3   (N.D. Cal. Sept. 27, 2010).  In deciding how much weight to give to any medical opinion, the ALJ

4   considers the extent to which the medical source presents relevant evidence to support the opinion.

5   20 C.F.R. § 416.927(c).  Generally, more weight will be given to an opinion that is supported by

6   medical signs and laboratory findings, and the degree to which the opinion provides supporting

7   explanations and is consistent with the record as a whole.  *Id.*  It is generally the ALJ's responsibility

8   to determine credibility and resolve conflicts in the medical testimony.  *Magallanes v. Bowen*, 881

9   F.2d 747 (9th Cir. 1989) (citation omitted).

10   "In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that

11   guide [the] analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of Soc. Sec.*, 528

12   F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the

13   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

14   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

15   examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th

16   Cir. 1995).

17   In *Lester*, the Ninth Circuit set forth general standards for determining the relative weight to be

18   given to the medical opinions of these three types of physicians:

19   As a general rule, more weight should be given to the opinion of a treating source than to the
    opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th

20   Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor,
    it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d

21   1391, 1396 (9th Cir. 1991).  We have also held that "clear and convincing" reasons are
    required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418,

22   422 (9th Cir. 1988).  Even if the treating doctor's opinion is contradicted by another doctor,
    the Commissioner may not reject this opinion without providing "specific and legitimate

23   reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*,
    722 F.2d 499, 502 (9th Cir. 1983).

24   The opinion of an examining physician is, in turn, entitled to greater weight than the opinion

25   of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant
    v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

26   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the
    uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.  And like the

27   opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by
    another doctor, can only be rejected for specific and legitimate reasons that are supported by

28   substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *Id.* However, even where the opinions of an examining doctor are uncontradicted, the ALJ may

2    reject those opinions or give them only minimal weight if they "are conclusory, brief, and

3    unsupported by the record as a whole, . . . or by objective medical findings." *Batson v.*

4    *Commissioner of Soc. Security*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*,

5    242 F.3d 1144, 1149 (9th Cir. 2001) (holding that ALJ can reject the opinion of a treating physician

6    whether or not that opinion is contradicted)).

7        "The opinion of a non-examining medical advisor cannot by itself constitute substantial evidence

8    that justifies the rejection of the opinion of an examining or treating physician." *Morgan v.*

9    *Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).  The Ninth

10   Circuit has upheld the rejection of a treating or examining physician based on the testimony of a

11   nonexamining medical advisor when the ALJ has not relied on that testimony alone.  *See*

12   *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v.*

13   *Shalala*, 66 F.3d 179 (9th Cir. 1995).  "The opinions of non-treating or non-examining physicians

14   may also serve as substantial evidence when the opinions are consistent with independent clinical

15   findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

16   **A.  Dr. Thomsen's Opinion**

17       Mr. Richey argues that the ALJ erred by rejecting Dr. Thomsen's opinion in favor of the non-

18   examining ME's opinion.  Pl.'s Mot., ECF No. 18 at 17-20.  Mr. Richey contends the ALJ should

19   have given "great weight" to Dr. Thomsen's opinion because she is an examining physician and a

20   specialist in psychology, and because her opinion is supported by medical signs and objective testing

21   and is consistent with the overall record.  *Id.* at 15.  In contrast, Mr. Richey argues, the ALJ

22   misconstrued Dr. Kivowitz's poorly-supported opinion, and applied it in a manner contrary to the

23   weight of authority.  *Id.* at 14-15.  The court agrees with Mr. Richey's contention that the ALJ

24   improperly disregarded Dr. Thomsen's opinion.

25       As discussed in more detail above, Dr. Thomsen's 12-page report summarized Mr. Richey's

26   medical history and explained her methodology (which included 9 different tests).  Ultimately, she

27   opined that "[e]ven if [Mr. Richey] were to stop his substance abuse, his psychological symptoms

28   would still be prominent and debilitating," and "his substance abuse does not appear to be the cause

1    of his mental illnesses, rather it is the result of his attempts to mitigate his symptoms.  Mr. Richey

2    also has symptoms of personality disorders, which can be causal factors in substance abuse but are

3    never caused by substance abuse." AR 565, 573.  The ALJ "accord[ed] absolutely no weight" to Dr.

4    Thomsen's opinion "to the extent that [it] suggested that the claimant suffers from any 'severe'

5    mental impairment independent of substance abuse," because of a lack of evidence in the record "of

6    any period of sustained abstinence from alcohol and drugs." AR 19-20.

7         The court finds that the ALJ erred by applying a "sustained abstinence" requirement for several

8    reasons.  First, the ALJ cited Dr. Kivowitz's testimony as the source of the "sustained abstinence"

9    requirement, *id.*, even though Dr. Kivowitz never provided that opinion.  When the ALJ asked Dr.

10   Kivowitz if it was "impossible to determine the claimant's functioning at all independent of

11   substance abuse," Dr. Kivowitz responded that he could not but "[m]aybe somebody else could."

12   AR 53.  When the ALJ repeated the question, Dr. Kivowitz responded similarly.  *See also* AR 55-56.

13        Second, even if Dr. Kivowitz – a nonexamining physician – had given that opinion, it was error

14   to give more weight to his opinion than to Dr. Thompsen – an examining physician – because the

15   record contains no evidence to support any "sustained abstinence" requirement.  *See Magallanes v.*

16   *Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d

17   179 (9th Cir. 1995).

18        Third, the ALJ also erred to the extent he relied on Dr. Kivowitz's purported testimony "that 18

19   months of abstinence is required before a reliable assessment could occur." AR 20.  That misstates

20   Dr. Kivowitz's testimony.  *See* AR 54-55.  Dr. Kivowitz actually said that the lingering affects of

21   Mr. Richey's drug use "would make it very difficult to tell" "how he could be clean and sober." *Id.*

22   And when the ALJ asked "what degree of time [he] felt was necessary for those affects to be gone,"

23   Dr. Kivowitz said "[w]ell, I am thinking, at least, 18-months." AR 55.  But there is a difference

24   between Dr. Kivowitz's testimony (that lingering affects would make diagnosing Mr. Richey more

25   difficult) and the ALJ's interpretation of that testimony (that it is impossible to evaluate Mr. Richey

26   until he is sober for 18 months).  And the ALJ cited no other evidence that would support rejecting

27   Dr. Thomsen's opinion because of Dr. Kivowitz's testimony.

28        Even if Dr. Kivowitz had testified that 18 months of sobriety is required before any reliable

UNITED STATES DISTRICT COURT
For the Northern District of California

1   assessment could occur, it still would be error to accord that opinion dispositive weight given the

2   weak support in the record.  When the ALJ asked Dr. Kivowitz the basis for the 18-month time

3   period, he responded that he had just been at a conference in New Orleans and "many people felt

4   just what I just said."  AR 55.  In fact, Dr. Kivowitz contradicts himself on this point.  Just before

5   making these statements, Dr. Kivowitz testified that he "could render some opinion about [Mr.

6   Richey's] functioning independently of the substance" if he "went to a drug rehabilitation center and

7   spent the time they allotted for him there, and then came out."  AR 54.  There was no suggestion that

8   drug treatment took 18 months and Dr. Kivowitz did not reconcile this contradiction.

9       Dr. Kivowitz's testimony is also contradicted by the SSA's guidelines and Ninth Circuit

10   authority.  According to the SSA, "[t]he key factor . . . in determining whether drug addiction or

11   alcoholism is a contributing factor material to the determination of disability is whether [the

12   claimant would still be found] disabled if [he] stopped using drugs or alcohol."  20 C.F.R.

13   § 416.935(b)(1).  The Social Security Administration's Programs Operations Manual System

14   ("POMS") states that substance abuse is material if after a period of one month of sobriety the

15   impairment by itself is not disabling.  *See* POMS § DI 90070.050(D)(3).

16       The Ninth Circuit has relied on the POMS guidelines in Social Security appeals.  *See McKee v.*

17   *Comm'r of Soc. Sec. Admin.*, 446 F. App'x. 36 (9th Cir. 2011) (holding that the ALJ erred by

18   rejecting the VA's assessment that claimant was completely disabled when VA assessed claimant

19   after seven weeks of sobriety).  There, the  court explained that "although the POMS 'lacks the force

20   of law . . ., [t]he logical inference is that if, after a drug-[] free period of one month, the other

21   impairments are still disabling, the individual's drug and alcohol addiction should not be considered

22   material.'"  *Id.* at 38 n.1 (quoting *Ingram v. Barnhart*, 72 F. App'x 631, 636 n.30 (9th Cir. 2003)).

23       In addition, the DSM-IV states that "ideally, the clinician should attempt to observe the

24   individual during a sustained period (e.g. 4 weeks) of abstinence," but because that is not always

25   possible, clinicians should look to "whether psychotic symptoms appear to be exacerbated by the

26   substance and to diminish when it has been discontinued, the relative severity of psychotic

27   symptoms in relation to the amount and duration of substance use, and knowledge of the

28   characteristic symptoms produced by a particular substance . . ."  DSM-IV at 283.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    If any period of sobriety is required in order to make a determination, the above sources indicate

2    that a period of one month is sufficient.  Dr. Kivowitz's testimony that an 18-month period is

3    required, based only on a discussion he had at a recent conference, is not supported by substantial

4    evidence and thus did not warrant the great weight accorded it by the ALJ.  In sum, the court finds

5    that it was error for the ALJ to reject Dr. Thomsen's well-reasoned opinion based on a

6    misinterpretation of a nonexamining physician's poorly-supported testimony.

7        **B.  Opinions of Social Workers Sarah Thibault and Peter Morris**

8        Mr. Richey argues that the ALJ erred by according no weight to the opinions of social worker

9    Sarah Thibault and psychiatric social worker Peter Morris that Mr. Richey's mental impairment

10   existed independent of substance abuse.  Pl.'s Mot., ECF No. 18 at 16.  The ALJ noted that "neither

11   [Ms. Thibault nor Mr. Morris] is a licensed psychologist or psychiatrist whose opinion would be

12   entitled to greater deference" and that there was no evidence Mr. Richey had ever abstained from

13   controlled substances for a sustained period.  AR 19-20.  Mr. Richey also argues that the social

14   workers' opinions should have been given greater weight than non-examining medical expert Dr.

15   Kivowitz because they directly treated him and had greater knowledge of his mental conditions and

16   functioning, and their opinions are consistent with the record as a whole.  *Id.*

17       Evidence from an acceptable medical source is required to establish the existence of a medically-

18   determinable impairment or impairments.  20 C.F.R. §§ 404.1513(a), 416.913(a).  "Under social

19   security disability guidelines distinguishing opinions coming from acceptable medical sources and

20   those coming from other sources, Commissioner of Social Security is permitted to accord opinions

21   from other sources less weight than opinions from acceptable medical sources."  *Thomas v.*

22   *Barnhart*, 278 F.3d 947 (9th Cir. 2002) (citing Social Security Administration Regulations,

23   § 404.1527, 42 U.S.C.A. App.; 20 C.F.R. § 416.927).  Also, the Social Security Act states that even

24   the opinion of a claimant's treating physician need not be accepted by the ALJ if that opinion is

25   brief, conclusory, and inadequately supported by clinical findings.  42 U.S.C.A. § 423(d)(1)(A).

26       Mr. Richey's assertion that the social workers directly treated him and were more knowledgeable

27   about his mental conditions and functioning is unsupported by the record, which is unclear as to the

28   number of times Mr. Richey was seen by either Ms. Thibault or Mr. Morris and provides little

UNITED STATES DISTRICT COURT
For the Northern District of California

1    information about why they would be particularly knowledgeable about his condition.  AR 667.  Ms.

2    Thibault stated in her letter that she had recently begun working with Mr. Richey and had met with

3    him "a number of times," but the record contains information from only one meeting and does not

4    indicate the quantity or dates of other meetings.  AR 667-69.  The record includes a handwritten

5    assessment form indicating substance abuse of alcohol, cocaine, and prescription drugs, as well as a

6    typed letter dated the same date, November 12, 2009.  *Id*.  In the letter, Ms. Thibault stated it was

7    her "impression that Mr. Richey has an underlying mental health diagnosis that is independent from

8    his substance dependence disorder," yet admitted that he "needs a thorough psychiatric assessment

9    to piece out the specifics of his diagnosis."  AR 667.  Ms. Thibault's opinion is not supported by

10   clinical findings and she does not explain the basis for her conclusion that Mr. Richey's symptoms

11   exist independent of his substance abuse.

12       The record includes only one two-paragraph letter from Mr. Morris, dated May 24, 2010.  *See*

13   AR 315.  He described Mr. Richey as "a client of the Community Justice Center since December of

14   2009," but did not indicate whether he had met with Mr. Richey personally, with what frequency, or

15   in what capacity.  AR 315.  Mr. Morris' statement that he believed Mr. Richey's non-compliance

16   with their program was "a direct result of an underlying personality disorder independent of his drug

17   use" is a conclusory statement and is unsupported by any objective findings or explanation of the

18   basis for his conclusion.  *Id*.

19       In sum, the court rejects Mr. Richey's general position that the ALJ must give more weight to

20   the opinions of Ms. Thibault and Mr. Morris than to the opinion of board-certified psychiatrist Dr.

21   Kivowitz.  Applied to the facts of this case, it would not have been error for the ALJ to accord less

22   weight to these social workers' opinions had they been contradictory to Dr. Kivowitz's opinion.  But

23   to the extent that the ALJ rejected their opinions based on the misinterpretations of Dr. Kivowitz's

24   opinion discussed above, the court finds that rejection was in error.

25   **C.  Dr. Sprick's Opinion**

26       Next, Mr. Richey argues that the ALJ improperly ignored Dr. Sprick's opinion that Mr. Richey's

27   "depression coexists with addiction, the latter probabl[y] serving as the vehicle that both manifests

28   and contains the former."  AR 592-93; Pl.'s Mot., ECF No. 18 at 10-11.  The Commissioner

1   counters that Dr. Sprick's report was neither significant nor probative, so the ALJ did not need to

2   discuss it.  Def.'s Mot., ECF No. 20 at 7.

3       While the ALJ must develop the record and interpret the medical evidence in making a

4   determination of disability, it is not necessary to "discuss every piece of evidence."  *Howard ex rel.*

5   *Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d 383, 386

6   (8th Cir. 1998)); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  However, the

7   ALJ must explain the reasons for rejecting any significant probative evidence.  *See Howard v.*

8   *Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Without such explanations, the reviewing court

9   cannot determine whether the evidence was rejected or ignored, and it cannot conduct a meaningful

10  review.  *Cochrane v. Barnhart*, 78 F. App'x 561, 562 (9th Cir. 2003); *see also Hanna v. Astrue*, 395

11  F. App'x. 634, 636 (11th Cir. 2010).  The Ninth Circuit has found medical evidence to be neither

12  significant nor probative when it relates to a time period irrelevant to the claimed disability, when it

13  consists of lay testimony, and when it is brief, conclusory, and unsupported by the record.  *See*

14  *Lockwood v. Comm'r Soc. Sec. Admin.*, 397 F. App'x 288, 289-90 (9th Cir. 2010); *Vincent on Behalf*

15  *of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

16      Mr. Richey contends that Dr. Sprick's opinion is significant and probative and thus should have

17  been addressed by the ALJ because it includes a dual diagnosis of depression coexisting with

18  addiction and is based on an evaluation of Mr. Richey during a period of sobriety.  Pl.'s Mot., ECF

19  No. 18 at 10-11.  The Commissioner argues that Dr. Sprick's opinion is not as significant or

20  probative as Mr. Richey suggests because Dr. Sprick stated that it was "possible that the [] clinical

21  picture is in part due to the lingering aftermath of a protracted drug and alcohol addiction . . . ."

22  Def.'s Mot., ECF No. 20 at 7.  The Commissioner concludes that Dr. Sprick was thus uncertain of

23  what effect Mr. Richey's substance abuse had on his mental health symptoms.  *Id.*

24      Dr. Sprick's report is an examining physician's opinion that is relevant to the claimed period of

25  disability.  The four-page report cannot be considered brief or conclusory.  It includes two pages of

26  notes indicating what Mr. Richey reported to Dr. Sprick during the interview and two pages of Dr.

27  Sprick's impressions and diagnoses.  Nor is it unsupported by the record as a whole, which includes

28  similar opinions from Dr. Thomsen, Sarah Thibault, and Peter Morris.  Dr. Sprick's opinion is not

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the type of evidence that may be rejected by the ALJ without explanation.  Because Dr. Sprick's

2    opinion constitutes significant, probative evidence, the ALJ improperly failed to explain the reason

3    for ignoring or rejecting it.

4    **III.  THE ALJ'S DETERMINATION THAT MR. RICHEY LACKED CREDIBILITY**

5         Next, Mr. Richey argues that the ALJ provided legally insufficient reasons for finding him not

6    credible and thus erred in discounting his statements regarding the severity of his symptoms.  Pl.'s

7    Mot., ECF No. 18 at 21.  The Commissioner counters that the ALJ gave valid reasons for

8    discounting Mr. Richey's credibility.  Def.'s Mot., ECF No. 20 at 9.

9         If the ALJ finds a claimant's credibility to be unreliable, the ALJ must make that determination

10   with findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

11   discredit the claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citation

12   omitted).  The ALJ may consider at least the claimant's reputation for truthfulness, inconsistencies

13   either in the claimant's testimony or between his testimony and his conduct, daily activities, work

14   record, and testimony from physicians and third-parties regarding the nature, severity and effect of

15   the symptoms of which the claimant complains.  *Id.*; *see also Light v. Soc. Sec. Admin.*, 119 F.3d

16   789, 792 (9th Cir. 1997).

17        The ALJ discounted Mr. Richey's credibility based on the following: (1) the references to Mr.

18   Richey's continuing substance abuse and drug-seeking behavior; (2) his extensive criminal

19   background and lack of work history; and (3) his inconsistent statements regarding his drug use and

20   activities.  AR 15-21.

21        The ALJ initially explained that he rejected Mr. Richey's statements regarding his symptoms

22   because "contrary to the claimant's allegation that he is disabled independent of substance abuse, the

23   record . . . is replete with references to ongoing significant substance abuse . . . ."  AR 21.  Just

24   because Mr. Richey used drugs does not mean that his testimony regarding underlying psychological

25   problems lacks credibility.  The ALJ appears to be applying his interpretation of Dr. Kivowitz's

26   testimony about the difficulty of diagnosing Mr. Richey's psychological impairments to Mr.

27   Richey's description of his own symptoms.  That is an improper basis for discrediting Mr. Richey's

28   testimony.  If the ALJ relied solely on that rationale, it would be clear error.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   The ALJ's other reasons for discrediting Mr. Richey, however, are amply supported.  For

2   example, the ALJ found Mr. Richey's drug-seeking behavior to undermine his credibility,

3   specifically, Mr. Richey's "pattern of repeated requests for refills of narcotic medications after [he]

4   reportedly lost his supply of such medications."  AR 21.  This is probative of Mr. Richey's

5   propensity for truthfulness and is a proper basis for discrediting his testimony.  Furthermore, the

6   record amply supports the ALJ's finding.  *See, e.g.,* AR 15  ("demanded vicodin for foot pain but

7   physical examination was unremarkable . . . neuropathy was then described as 'questionable'" in

8   February 2007); AR 16-17 (in July 2007 claimant reported his Ativan and Vicodin had been stolen

9   from him while riding the bus but his physician refused to refill prescriptions for controlled

10  substances; in October 2007 requested pain medication or benzodiazepines to "clear his mind" after

11  heavy crack and alcohol consumption; in November 2007 again reported he needed a refill of MS

12  Contin because his medications had been stolen; in January 2008 requested narcotics for foot pain

13  but neuropathic findings were negative; in March 2008 again requested narcotics but diagnosed with

14  "questionable" neuropathy; in July 2008 denied an increased dose of MS Contin which he was

15  "aggressively seeking"; in 2009 prescribed narcotics for reported foot pain but repeated physical

16  exams revealed no positive objective findings and lab tests for foot complaints negative).  This

17  evidence supports the ALJ's finding.

18      The ALJ also referenced Mr. Richey's extensive criminal background, including his convictions

19  for robbery and grand theft.  In finding a claimant's testimony not credible, an ALJ may rely on

20  convictions for crimes of moral turpitude, including robbery.  *See Albidrez v. Astrue*, 504 F. Supp.2d

21  814, 822 (C.D. Cal. 2007).  Accordingly, this is a proper basis.

22      The ALJ found that Mr. Richey's lack of significant work history undermined his credibility.

23  Mr. Richey argues that this is an insufficient basis because "Social Security rules specifically

24  acknowledge lack of work experience as a vocationally adverse factor that may contribute to a

25  finding of disability."  Pl.'s Mot., ECF No. 18 at 22 (citing SSR 82-63).  But "efforts to work" can

26  also be a credibility consideration.  *See Thomas*, 278 F.3d at 959; 20 C.F.R. § 416.929(a).

27  Accordingly, it was not error for the ALJ to consider Mr. Richey's lack of work history as a

28  credibility factor.

1    Finally, the ALJ considered the inconsistent statements that Mr. Richey made regarding his drug

2    use.  AR 15  (acknowledged he was smoking crack in April 2007; "[n]onetheless, in July 2007,

3    while acknowledging that he had smoked crack one day prior . . . the claimant asserted that he had

4    been previously been [sic] clean for six months"); AR 16 (denied drug use after running into traffic

5    but physician indicated behavior may have been due to drugs or alcohol); AR 17 (told physician he

6    had begun a substance abuse treatment program one week earlier but continued to drink and use

7    crack cocaine).  The ALJ also noted that Mr. Richey testified that he did not use drugs while

8    incarcerated at San Quentin because they would have "messed up [his] meds."  AR 18.  At the same

9    time, Mr. Richey "asserted that no medication was of any help, anyway."  *Id.*  The ALJ did not err in

10   finding these inconsistent statements probative of Mr. Richey's credibility.

11   **IV.  TELEPHONIC TESTIMONY**

12   Mr. Richey argues that the Commissioner "hindered" his due process rights by permitting Dr.

13   Kivowitz to testify by telephone without giving Mr. Richey's counsel prior notice.  Pl.'s Mot., ECF

14   No. 18 at 20.  The Commissioner counters that this was harmless error and that Mr. Richey's

15   counsel did not object at the hearing.  Def.'s Mot., ECF No. 20 at 8-9..

16   Under 20 C.F.R. § 404.938(b), notice shall be given to the claimant if his appearance or that of

17   any other person testifying is scheduled to be made in person, by video teleconferencing, or by

18   telephone.  "The burden is on the party claiming error to demonstrate not only the error, but also that

19   it affected his 'substantial rights,' which is to say, not merely his procedural rights.  *Ludwig v.*

20   *Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citation omitted).  To meet this burden, "the claimant

21   need not necessarily show what other evidence might have been obtained had there not been error,

22   but does have to show at least a 'substantial likelihood' of prejudice."  *Id.*  One of the factors the

23   court must consider is "the likelihood that the result would have been different."  *Id.*

24   Mr. Richey argues generally that his due process rights were "hindered"[19] because the exhibits

25   were not numbered, and the ME created his own numerical system to organize the medical evidence.

26   Pl.'s Mot., ECF No. 18 at 20.  The hearing transcript, however, indicates that the ALJ instructed the

27

28

---

[19]  It is unclear whether Mr. Richey contends his due process rights were actually violated.

1   ME to cite the source and date on the documents as he testified.  AR 47-48.  The ME's testimony is

2   complete with source and date references, and there is no further indication of confusion in the

3   transcript.  AR 50-56.  Mr. Richey does not explain how this initial confusion was related to the

4   ME's testifying by telephone, nor does he explain how his substantial rights were affected by not

5   receiving prior notification.  Mr. Richey's argument thus falls far short of meeting his burden of

6   showing a substantial likelihood of prejudice.  The court finds that permitting the ME to testify

7   telephonically was harmless error.

8   **V.  POST-HEARING MEDICAL EVIDENCE**

9        Mr. Richey also argues that this court should consider the opinion of Dr. Kimberly Kono, a

10  neuropsychologist who evaluated Mr. Richey in November 2011, over one year after the ALJ's

11  decision.  Pl.'s Mot., ECF No. 18 at 15-16.  The appeals council made that opinion part of the

12  administrative record.  *See* AR 4.  The Commissioner does not oppose consideration of Dr. Kono's

13  opinion, but argues it is not probative.  Def.'s Mot., ECF No. 20 at 8.  Because the court remands

14  this matter for further proceedings, it need not address the opinion here.  The ALJ shall consider Dr.

15  Kono's opinion on remand.

16  **VI.  REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

17       Finally, Mr. Richey asks the court to remand this matter to the agency for an award of benefits

18  or, alternatively, for further proceedings.  *See* Pl.'s Mot., ECF no. 18 at 23-25.  It is within the

19  court's discretion to remand a case either for further administrative proceedings or for an award of

20  benefits.  *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Here, the record must be

21  developed further based on a proper weighing of the medical evidence.  Because that is a function

22  for the Commissioner, the court remands for further proceedings.

23       The court does not reach the remaining arguments in Mr. Richey's motion.  He asks the court to

24  find that the ALJ erred in failing to find personality disorder a severe impairment at Step Two and

25  that his substance abuse was not a contributing factor material to his disability.  Pl.'s Mot., ECF No.

26  18 at 20, 23.  Both of these determinations were premised, at least in part, on the ALJ's erroneous

27  weighing of the medical evidence.  On remand, therefore, the ALJ will reconsider these

28  determinations in light of the evidence.

1

**CONCLUSION**

2    Based on the foregoing, the court **GRANTS IN PART** claimant's motion for summary

3    judgment, **DENIES IN PART** the Commissioner's cross-motion for summary judgment, and

4    **REMANDS** this case to the Commissioner for further proceedings in accordance with this order.

5    This disposes of ECF Nos. 18 and 20.

6    The Clerk of Court shall close the file.

7    **IT IS SO ORDERED.**

8    Dated:  September 17, 2013

9

10
_____
LAUREL BEELER
United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

C 12-04988 LB
ORDER

35